KENNEDY, Justice.
First National Bank of Brundidge (the “Bank”), filed a complaint for interpleader, Rule 22, A.R.Civ.P., naming as defendants Larry Ballard, Lucius Whatley, Kristi Whatley,[1] and Cheryl Senn, and the Bank deposited $15,986.37 with the trial court as the funds for interpleader. The trial court ultimately awarded the disputed funds to Ballard. Lucius Whatley appeals, arguing that the trial court erred by allowing the Bank to interplead the disputed funds.
The evidence indicates that Ballard and Lucius Whatley had an agreement whereby Whatley was to provide Ballard a “consulting service” for Ballard’s plumbing business. According to Whatley, Ballard was supposed to pay him weekly for those consulting services; he contends that any funds Ballard collected in excess of the costs of Ballard’s business were “to be applied to the debt owed by Ballard to Whatley for the consulting services.”
Cheryl Senn worked for Lucius Whatley. On December 14, 1985, Senn had possession of checks made payable to Ballard and to his plumbing company. She took the checks to the Bank to open an account. A Bank employee, Merlin Austin, told Senn that the account had to be opened in Ballard’s name, because all the checks that she was depositing to establish the account were made payable to Ballard.
On the signature card for the account, Austin typed the name of the account as “Larry E. Ballard c/o Cheryl Senn” and typed Ballard’s Social Security number as the taxpayer identification number for the account. Senn and Kristi Whatley signed the card. Senn endorsed the checks by signing Ballard’s name and deposited them to the new account.
On or about December 28, 1985, Ballard went to the Bank and demanded that the money deposited in the account be paid to him that day, because, he claimed, the funds belonged to him and him alone. Jimmy Ramage, chief executive officer of the Bank, knew all the parties involved. He determined that all the checks deposited into the account had been made payable to Ballard and that Senn had endorsed all the checks by signing Ballard’s name to them. Ramage contacted the Bank’s attorney, who suggested that the Bank file a complaint for interpleader.
Whatley argues that the trial court erred by allowing interpleader, for two reasons: 1) He says Ala.Code 1975, § 5-5A-42, effectively bars interpleader in this fact situation, and 2) he says the bank failed to meet the requirements of Rule 22, A.R. Civ.P.
Rule 22 provides in pertinent part:
“(a) ... Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another *533 or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such inter-pleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.”
Section 5-5A-42 provides:
“Notice to any bank of an adverse claim to a deposit standing on its books to the credit of any person shall not be effectual to cause said bank to recognize said adverse claimant unless said adverse claimant shall also either procure a restraining order, injunction or other appropriate process against said bank from a court of competent jurisdiction in a civil action therein instituted by such claimant wherein the person to whose credit the deposit stands is made a party and served with summons or shall execute to said bank in form and with sureties acceptable to it, a bond indemnifying said bank from any and all liability, loss, damage, costs and expenses for and on account of the payment or recognition of such adverse claim or the dishonor of or failure to pay the check or failure to comply with other order of the person to whose credit the deposit stands on the books of said bank; provided, that this section shall not apply in any instance where the person to whose credit the deposit stands is a fiduciary for such adverse claimant and the facts constituting such relationship, as well as the facts showing reasonable cause of belief on the part of the said claimant that the said fiduciary is about to misappropriate said deposit, are made to appear by the affidavit of such claimant.”
Whatley contends that § 5-5A-42 prohibits the Bank from recognizing adverse claims to the disputed account, except for those presented in compliance with the statute; that no claims were presented against the account in such a manner; that the Bank therefore could not be exposed to “double or multiple liability,” Rule 22, A.R. Civ.P.; and, accordingly, that interpleader was improper.
In Perdue v. State National Bank, 254 Ala. 80, 47 So.2d 261 (1950), the Court addressed Tit. 5, § 128(3), Code of 1940, the predecessor of § 5-5A-42:
“It appears that [this statute] has been adopted in various other states. The necessity for it and its purpose is stated in Gendler v. Sibley State Bank, D.C., 62 F.Supp. 805, 810. The Act is designed to apply to a case where the deposit stands on the books of the bank to the credit of one or more persons and where adverse claim to the deposit is made by a stranger. In such event the bank would be justified in allowing withdrawals by the depositors unless the stranger had furnished the bond and affidavit required by the statute. Accordingly the statute does not apply to a case where the names of both claimants appear as depositors.”
254 Ala. at 82-83, 47 So.2d at 264 (emphasis added). The Court then specifically held that interpleader was permissible. Id.
Larry Ballard did not physically take the checks to the bank, sign them, and deposit them. However, the account was opened in his name (and Senn’s), with his Social Security number used as the taxpayer identification number. All the checks deposited to the account were payable to him. Senn endorsed the checks by signing Ballard’s name. Under Perdue, Ballard was no “stranger” to the account, and under the fact situation in this case, he was a depositor to the account as well as a claimant to its funds, Whatley’s arguments to the contrary notwithstanding. Accordingly, under Perdue’s holding, § 5-5A-42 does not apply and Whatley’s argument concerning § 5-5A-42 fails. Furthermore, to hold otherwise might well allow an individual to take possession of checks belonging to another and deposit them, and while the owner of the checks sought to comply with § 5-5A-42 by filing an injunction or obtaining the bond necessary under that provision, the other “depositor.” could withdraw and spend the funds deposited.
Whatley’s argument that the Bank was not exposed to “double or multiple liability”, Rule 22, A.R.Civ.P., is premised on the *534 contention that Ballard is not a customer or depositor as to the account; accordingly, Whatley argues, the Bank could not be liable to him for the funds in the account, and there could be no risk of double or multiple liability. We have already discussed how the evidence indicates that Ballard was indeed a customer and a depositor as to the account, and there is no need to repeat that discussion. Whatley’s argument fails, because Ballard had a claim to the account that the Bank might have been liable to Ballard for, in addition to the claims made on the account by Lucius Whatley, Kristi Whatley, and Senn, for which the Bank might also have been liable. Rule 22, A.R.Civ.P.
The judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.

. Although Kristi Whatley is named as a defendant in the action, neither the parties’ briefs nor the record indicates her relationship to the other parties to the action.